**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Action No. 1:21-cr-00246-DDD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    **JASON MCGUIRE,**
2.    **TIMOTHY STILLER,**

    Defendants.

---

**DEFENDANTS' JOINT MOTION IN LIMINE TO EXCLUDE REFERENCES TO OR EVIDENCE ABOUT COMPLIANCE POLICIES, ANTITRUST TRAININGS, CODES OF CONDUCT, AND EDUCATIONAL COURSES**

---

Defendants Jason McGuire and Timothy Stiller, by and through undersigned counsel, respectfully submit this motion in limine to exclude references to or evidence about compliance policies, antitrust trainings, codes of conduct, and external educational courses.

**INTRODUCTION**

The Court should exclude references to or evidence about any compliance policies, antitrust trainings, or corporate codes of conduct that may have applied to Messrs. McGuire and Stiller, as well as any information about courses taken by Mr. Stiller at Colorado State University ("CSU")—just as Chief Judge Brimmer excluded evidence of compliance policies and corporate codes of conduct in *Penn I*, *II*, and *III*. The government has included on its exhibit list documents pertaining to such codes and policies at Pilgrim's Pride (Messrs. McGuire and

1

Stiller's employer), as well material from CSU (where Mr. Stiller was a student).  *See, e.g.*, PILGRIMS-DOJ-0000508747; PILGRIMS-DOJ-0000508750; PILGRIMS-DOJ-0000525810 (evidence of corporate antitrust trainings at Pilgrim's Pride); ECF Nos. 212-1 through 212-5 (evidence concerning a CSU course—Bus660—attended by Mr. Stiller and that included a "module" on antitrust regulations).  These policies, external trainings, and course materials have no bearing on whether Messrs. McGuire and Stiller violated the Sherman Act.  And even if this evidence were of some marginal relevance, its probative value would be substantially outweighed by the risk of unfair prejudice.  In particular, evidence of corporate compliance policies and trainings, codes of conduct, and a college course related to antitrust regulations would be highly prejudicial because a jury could wrongly conflate a failure to comply with a company policy with the failure to comply with the law, and jurors might think that a professor's lectures about antitrust laws should govern their deliberations instead of the evidence presented at trial and the instructions of law provided by the Court.

On October 7, 2022, Messrs. McGuire and Stiller conferred with the government about this motion, and the government stated its opposition.

In *Penn*, Chief Judge Brimmer ultimately excluded evidence of corporate compliance policies and internal codes of conduct.[1]  In *Penn I*, the Court initially admitted evidence of antitrust trainings, but granted defendants' motion to exclude evidence regarding internal compliance policies or codes of conduct, "since those are not standards by which the jury will need to assess the charge in this case." *United States v. Penn*, 20-cr-152-PAB, ECF No. 603

---

[1] The government did not seek to admit evidence of Mr. Stiller's coursework at CSU, and thus Chief Judge Brimmer did not rule on that issue.

2

(Oct. 7, 2021) at 67.  In *Penn II*, the Court broadened its prior ruling by excluding government exhibits regarding antitrust training "because of the risk of confusing the jury about the legal standard applicable to the charges in this case."  *Penn*, ECF No. 1087 (Feb. 22, 2022) at 2–3. More specifically, Chief Judge Brimmer held that antitrust training evidence was "irrelevant" to the defendants' state of mind and that "the probative value would be substantially outweighed by the risk of unfair prejudice under Rule 403."  *Id.* at 3.  The Court similarly excluded testimony from Pilgrim's general counsel, Nicholas White, regarding the company's draft antitrust policy. *Id.* at 5 ("Just as the actual policy is irrelevant and unduly prejudicial, Mr. White's testimony on it would also be irrelevant and unduly prejudicial.").  As the Court is aware, this is not the first time that the government, which opted to indict Messrs. McGuire and Stiller separately with the same conspiracy charged in the *Penn* case (and, in effect, forum shop), has sought to relitigate issues that they lost in the *Penn* prosecution.  And aside from the propriety of that decision, they are once again on the wrong side of the law.

## ARGUMENT

Only relevant evidence is admissible.  *See* Fed. R. Evid. 402.  Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," provided that the fact in question "is of consequence in determining the action."  Fed. R. Evid. 401.  Even relevant evidence, however, may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury."  Fed. R. Evid. 403.  Rule 403 requires the Court to perform a "balancing test" in which it "weigh[s] the probative value of the evidence against the danger of unfair prejudice."  *United States v. Guardia*, 135 F.3d 1326, 1328, 1331 (10th Cir. 1998).  This balancing test presents a

3

"hurdle[]" that even relevant evidence must clear before it may be admitted. *Id.* "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some potentially relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). The Court has "broad discretion" in determining whether the danger of unfair prejudice substantially outweighs the probative value of the evidence. *United States v. Irving*, 665 F.3d 1185, 1214 (10th Cir. 2011).

## I. Evidence of Compliance Policies, Codes of Conduct, and External Courses is Not Relevant and Should Be Excluded

An employee's knowledge or violation of internal employment guidelines is neither a crime nor evidence of one. *See Havensure, L.L.C. v. Prudential Ins. Co. of Am.*, 595 F.3d 312, 317 (6th Cir. 2010) (noting "a violation of internal policies" does not "suffice[ ] to render . . . conduct wrongful"); *United States v. Stoecker*, 920 F. Supp. 867, 874 (N.D. Ill. 1996) (it "is beyond dispute" that violation of "internal operating rules" does not "constitute a federal offense"); *United States v. Riley*, No. 13-cr-339-VEC, 2014 WL 3435721, at *6 (S.D.N.Y. July 14, 2014) (discussing the need to distinguish crime and violation of company policy in jury instructions when the company policy is broader than the federal statute). This is true in the antitrust context as well: a violation of company policy "does not show an explicit agreement" to do anything illegal under the Sherman Act. *Flextronics Int'l USA, Inc. v. Murata Mfg. Co.*, No. 5:19-cv-00078-EJD, 2020 WL 5106851, at *14 (N.D. Cal. Aug. 31, 2020) (dismissing Section 1 claim because evidence that parties "violated a compliance policy" by exchanging information "does not show an explicit agreement" to fix prices under antitrust law).

While compliance policies and trainings, codes of conduct, and university courses may reference the law, they are not court-sanctioned; even if they may reflect a company's or entity's "legal conclusions as to the scope and meaning of the Sherman Act," those conclusions carry no legal weight in a courtroom.  *Id*.; *see also In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 1:14-md-02503-DJC (D. Mass. Mar. 8, 2018), ECF No. 1089 (order excluding "policies against price fixing, payoffs or not being paid for delayed product entry" as irrelevant and unduly prejudicial).  Indeed, corporate antitrust compliance policies and trainings often take a conservative view of the law, prohibiting conduct that is perfectly legal out of an abundance of caution.  *See Flextronics*, 2020 WL 5106851, at *14 ("Indeed, . . . the compliance policy could be more robust than the Sherman Act.").  The same is true of "codes of conduct," which may reflect any number of different considerations having little, if anything, to do with federal law.  Similarly, a business school course that includes a module on antitrust regulations may or may not accurately reflect the state of the law, particular court rulings, or the legal principles implicated in this case.

## II.  Any Minimal Probative Value Derived From This Evidence is Substantially Outweighed by the Unfair Prejudice It Would Cause

Even if evidence of corporate compliance policies and trainings, internal codes of conduct, or a college business course are deemed to have some relevance to this case, whatever probative value that evidence has would be "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, [or] wasting time."  Fed. R. Evid. 403.  First, "the testimony could confuse the jury on what the governing law was" and "create prejudice far too great to be cured by a limiting instruction."  *In re Urethane Antitrust Litigation*, No. 2:08-cv-5169-WJM-MF, 2016 WL 475339, at *2 (D.N.J. Feb. 8, 2016); *see also*

*MM Steel, LP v. Reliance Steel & Aluminum Co.*, No. 4:12-cv-1227, 2013 WL 6588836, at *3 (S.D. Tex. Dec. 16, 2013) ("The Court is of the opinion that the various [antitrust] compliance policies . . . present a significant risk that the jury will be misled as to the Sherman Act's proper scope and interpretation."); *United States v. North*, No. 3:06-cr-323-CFD, 2007 WL 1630366, at *1 (D. Conn. June 5, 2007) (same).  In particular, testimony regarding compliance policies or internal trainings—which reflect a company's view of desired employee behavior and not the law—"undermine[s] the Court's role as the jury's sole source of law applicable to [the] case" and creates "significant risk that the jury will be misled" as a result.  *North*, 2007 WL 1630366, at *1 (excluding antitrust compliance policy).

Moreover, the introduction of evidence about compliance policies and trainings, codes of conduct, or external classes taken by Mr. Stiller would create a mini trial on these topics.  Defendants would need to introduce rebuttal evidence about the history, publication, training, enforcement, and corporate purpose of each compliance policy and code of conduct.  *See English v. District of Columbia*, 651 F.3d 1, 10 (D.C. Cir. 2011) (affirming exclusion of evidence about violations of police department policy because admission "would cause big time confusion of the issues, and preventing such confusion would require the admission of the conclusions to be hedged with jury instructions and necessitate a trial within a trial about the whole District of Columbia disciplinary system").  Evidence about Mr. Stiller's coursework at CSU would require an examination not just of the hypothetical antitrust scenarios discussed during the class, it would require an examination of Mr. Stiller's examination of those scenarios, and an examination of his instructor's examination of those scenarios.  The evidence would, in short, require a trial within a trial, implicating a whole host of collateral matters that would have to be

examined in order to put Pilgrim's internal policies, and Mr. Stiller's schoolwork, into some sort of meaningful context. This would create a side show. The Court should therefore preclude the government from making references to or introducing any evidence about compliance policies or codes of conduct.

## CONCLUSION

For the reasons discussed, the Court should exclude any and all references to or evidence about compliance policies, trainings, codes of conduct, and external classes.

RESPECTFULLY SUBMITTED,

*/s/ D. Jarrett Arp*
D. Jarrett Arp
Paul J. Nathanson
Davis Polk & Wardwell LLP
901 15th Street NW
Washington, DC 20005
(202) 962-7150
jarrett.arp@davispolk.com

Tatiana R. Martins
Greg D. Andres
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
(212) 450-4085
tatiana.martins@davispolk.com

*Attorneys for Mr. McGuire*

7

*/s/ Kristen M. Frost*
Kristen M. Frost
Patrick Ridley
Ridley McGreevy & Winocur PC-
Denver 303 16th Street, Suite 200
Denver, CO 80202
(303) 629-9700
frost@ridleylaw.com

*Attorneys for Mr. Stiller*

8

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1) for Criminal Cases.

By: */s/ D. Jarrett Arp*
     D. Jarrett Arp

9

**CERTIFICATE OF SERVICE**

      I hereby certify that, on this eleventh day of October, 2022, I caused the foregoing document to be electronically filed with the Clerk of Court for the United States District Court for the District of Colorado by using the CM/ECF system, which will serve electronic notifications of this filing on all counsel of record.

Respectfully submitted,

*/s/ D. Jarrett Arp*
D. Jarrett Arp
Davis Polk & Wardwell LLP
901 15th St, NW
Washington, DC 20005
(202) 962-7150
jarrett.arp@davispolk.com

*Attorney for Mr. McGuire*