**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
Judge Daniel D. Domenico

Criminal Case No. 21-cr-246-DDD

UNITED STATES OF AMERICA,

       Plaintiff,

       v.

1. **JASON MCGUIRE; and**
2. **TIMOTHY STILLER,**

       Defendants.

---

**UNITED STATES' MOTION *IN LIMINE* TO ELICIT TESTIMONY PERTAINING TO THE EXISTENCE OF AN AGREEMENT AND TO INTRODUCE EVIDENCE OF DEFENDANTS' ANTITRUST TRAINING AND EDUCATION**

---

The United States respectfully moves this Court for an order permitting the government (1) to elicit testimony from co-conspirators regarding the existence of a conspiracy by using the term "agreement" and (2) to introduce evidence of antitrust training, education, and compliance policies received by Defendants.  Such evidence is not only admissible, but key to the government's ability to prove elements of the charged crimes.  In particular, such evidence is highly probative of the existence of the charged conspiracy; of Defendants' motive to conceal and to prevent discovery of the conspiracy; and of Defendants' conspiratorial states of mind— including of Defendant Stiller's intent when engaging in witness tampering and obstruction. Courts routinely permit the government to introduce this type of evidence, and nothing about this case warrants a different conclusion.

**ARGUMENT**

**I.     Lay Witnesses Can Testify About the Existence of an "Agreement."**

Cases abound in which percipient witnesses testify about the existence of a price-fixing conspiracy by using the term "agreement" or "understanding," as such testimony is considered key direct evidence.  Indeed, "witnesses in antitrust cases have uniformly been permitted to testify concerning the existence of agreements and understandings . . . without any suggestion that questions as to agreements and understandings were objectionable." *United States v. Standard Oil Co.*, 316 F.2d 884, 890 (7th Cir. 1963) (collecting cases).  The United States respectfully requests that its witnesses be permitted to do the same.  *See United States v. Taubman*, 297 F.3d 161, 165 (2d Cir. 2002) (participation in price-fixing conspiracy "established by direct evidence—the testimony of [the CEOs] that [competitors] had . . . agreed to, inter alia, fix prices"); *United States v. Harford*, 870 F.2d 656 (4th Cir. 1989) (affirming conviction in criminal antitrust price-fixing case based on testimony that competitors "agreed on future promotional discounts" and testimony about "agreements as to price"); *Cole v. Hughes Tool Co.*, 215 F.2d 924, 940 (10th Cir. 1954) (describing testimony about whether there was agreement to "fix prices"); *Stanislaus Food Prod. Co. v. USS-POSCO Indus.*, 2013 WL 595122, at *8 (E.D. Cal. Feb. 15, 2013), *aff'd,* 803 F.3d 1084 (9th Cir. 2015) ("[T]estimony from percipient witnesses that defendants agreed at a certain meeting to fix prices or not to compete constitutes direct evidence of an agreement to restrain trade."); *In re Urethane Antitrust Litig.*, 913 F. Supp. 2d 1145, 1154 (D. Kan. 2012) (describing testimony "in the form of admissions by persons with knowledge of the agreement" as "direct evidence of an agreement."); *United States v. E.I. Du Pont De Nemours & Co.*, 118 F. Supp. 41, 227 (D. Del. 1953), *aff'd,* 351 U.S. 377 (1956) (describing testimony denying "existence of

2

any plan or agreement or arrangement between the two companies to fix prices"); *cf. United States v. Andreas*, 39 F. Supp. 2d 1048, 1061 (N.D. Ill. 1998), *aff'd*, 216 F.3d 645 (7th Cir. 2000) (describing testimony at trial about "allocating the sales volume" and who was "involved in citric acid price-fixing" in criminal antitrust conspiracy).[1]

Such testimony from co-conspirators is appropriate under Fed. R. Evid. 704(a), which provides that lay opinion testimony—even if it "embraces an ultimate issue"—is not only admissible, but welcomed as long as helpful to the jury. As the Advisory Committee Notes explain, "The basic approach to opinions, lay and expert, in these rules is to admit them when helpful to the trier of fact."[2]  *See also United States v. Goodman*, 633 F.3d 963, 968 (10th Cir. 2011) (lay opinion testimony admissible as long as it is (1) based on "the perception of the witness," (2) "helpful" to understanding testimony or "the determination of a fact at issue," and (3) not based on specialized knowledge).[3]

As in other antitrust cases, a co-conspirator's admission to participating in a price-fixing and bid-rigging conspiracy—based on his firsthand knowledge—is helpful to the jury in

---

[1] The Tenth Circuit has also often upheld testimony "about a defendant's substantive guilt" as appropriate, permitting characterizations such as "fraud," "kickbacks," and even allowing testimony from lay persons as to their views on whether the conduct was illegal.  *United States v. Brooks*, 736 F.3d 921, 931 n.2 (10th Cir. 2013); *see also Okland Oil Co. v. Knight*, 92 F. App'x 589, 600 (10th Cir. 2003); *United States v. Morris*, 573 F. App'x 712, 723 (10th Cir. 2014).

[2] Federal Rule of Evid. 704(a) makes clear that "[a]n opinion is not objectional just because it embraces an ultimate issue." Rule 704 was enacted to make defunct the "unduly restrictive" "strictures against allowing witnesses to express opinions upon ultimate issues," which "served only to deprive the trier of fact of useful information."  Advisory Committee Notes (citing 7 Wigmore §§1920, 1921; McCormick §12).

[3] Lay witnesses may even offer opinion testimony regarding a defendant's mental state.  *See United States v. Goodman*, 633 F.3d 963, 968 (10th Cir. 2011).

determining the existence of the conspiracy and in distinguishing when information exchange is a means of executing an unlawful agreement.  The United States may properly put such direct evidence before a jury and intends to do so at trial.

In the *Penn* trials, Chief Judge Brimmer permitted testimony about "agreement."  During Mr. Bryant's direct examination in both *Penn I* and *Penn II*, the United States asked Mr. Bryant if he had an understanding as to whether there was an agreement among competitors in the 2014 KFC negotiations; Chief Judge Brimmer overruled defense objections and permitted Mr. Bryant to answer the question with a yes or no.  *See Penn I*, Cert. Tr. at 936:22–937:10; *Penn II*, Cert. Tr. at 2081:16–2084:6.  Chief Judge Brimmer explained in *Penn II* that "the term 'understanding' is not necessarily objectionable," Cert. Tr. at 1931:8–9, as long as the witness "explain[s] exactly what he means by the term," Cert. Tr. at 1933:12.  He further explained that a witness could provide a proper opinion as long as he has "personal knowledge of" the issue and foundation is laid.  *Penn II*, Cert. Tr. at 1932:9–22.  In *Penn III*, Chief Judge Brimmer likewise overruled defense objections and permitted the United States to ask Mr. Bryant about his understanding of competitors sharing information in order to manipulate bids.  *Penn III*, Cert. Tr. at 561:9-563:15.

As noted in the certificate of conference below, Defendants do not object to testimony from co-conspirators about the existence of an "agreement" if the government lays foundation.

## II.    Defendants' Antitrust Training and Education are Admissible.

This Court should permit the United States to introduce evidence of antitrust training or policies received by Defendants (including company codes of conduct in force while Defendants were employed at Pilgrim's), as well as relevant antitrust education.  Such evidence is not only probative of whether and why Defendants engaged in the four charged counts, but also necessary

4

to rebut Defendants' arguments that their sharing of competitively sensitive information was typical in the industry, procompetitive, or otherwise "innocent."

> **A. Defendants' Antitrust Training Show Their Motives and States of Mind, which Defendants Have Put at Issue in this Case.**

The United States plans to admit evidence regarding Pilgrim's antitrust compliance policies during Defendants' employment at Pilgrim's, including evidence that Defendant Stiller attended these antitrust trainings.  The government also anticipates giving the jury a high-level overview of the contents of such trainings and policies.  *See* Attachment A, giving examples of Pilgrim's Codes of Conduct, including Pilgrim's 2014 Code of Conduct, Exhibit 291 at 5 ("[I]n order to comply with the antitrust laws and our policy of fair competition, employees should never engage in any of the following examples of unfair competitive behavior: 1.  Discussing with competitors any matter directly involved in competition between us and the competitor (e.g., sales prices, marketing strategies, market shares, and sales policies)."); Pilgrim's 2017 Code of Conduct, Exhibit 339 at 6 (same); Pilgrim's 2018 Code of Conduct and Ethics, Exhibit 338 at 10 ("Team Members must not engage in any conduct that may reduce free and fair competition by unfair means, such as arrangements with other companies or manipulation of bidding processes.  Team Members must not offer, request or exchange information with a competitor about prices, proposals, market share or other relevant information."); Narration to Pilgrim's 2019 Code of Conduct Training, Exhibits

308 to 330, 603.[4]  Evidence that Defendants' employer had policies and trainings that prohibited information sharing due to antitrust concerns is admissible as non-hearsay to show Defendants' knowledge, motive, and states of mind with regard to Count 1 (Sherman Act conspiracy), particularly with respect to efforts to conceal and prevent the discovery of the conspiracy as charged in the Superseding Indictment.  ECF no. 102 ¶ 57.d.

First, evidence about antitrust policies and trainings go directly to Defendants' motives in concealing the conspiracy.  Such evidence—showing Defendants knew what they did was unlawful—helps explain why Defendants and co-conspirators hid their actions from customers and sought to avoid, as much as they could, leaving a paper trail of incriminating messages.  In other words, Defendants' knowledge that their information sharing was unlawful provides context for and explains actions they took in furtherance of the conspiracy (concealment)—bearing both on the existence of the conspiracy and whether Defendants knowingly joined it.

Second, courts routinely admit such evidence to show a defendant's culpable state of mind.  *See, e.g.*, *Vazquez-Valentin v. Santiago-Diaz*, 459 F.3d 144, 151–52 (1st Cir. 2006) (documents should have been admitted even though they contained legal opinions, because they were offered to show state of mind and not for the truth of the matter asserted); *Gomez v. Rodriguez*, 344 F.3d

---

[4] The United States also intends to offer evidence showing Defendant McGuire received the Pilgrim's Code of Conduct in 2014 and that Defendant Stiller attended Code of Conduct trainings held by Pilgrims in 2018 and 2019.  Defendant Stiller also attended the online 2019 training.  *See* Exhibits 336 and 380 (spreadsheet of training reports); 337 (email from Defendant Stiller regarding the training and Defendant Stiller's acknowledgement of receipt of Pilgrim's Code of Business Conduct and Ethics); 401 (email from Defendant McGuire regarding completion of Code of Conduct acknowledgement); 426 at 27 (Defendant Stiller's Pilgrim's personnel file); 630 and 631 (antitrust training sign-in sheets signed by Defendant Stiller for the 2018 and 2019 Code of Conduct trainings).

103, 114–15 (1st Cir. 2003) (testimony regarding legal advice is admissible to show the defendant's understanding at the time and of his state of mind); *United States v. Hobbs*, 190 F. App'x 313, 316-17 (4th Cir. 2006) (admitting legal-opinion testimony offered to demonstrate defendant's intent); *United States v. Riley*, No. 13-CR-339 (VEC), 2014 WL 3435721, at *6 (S.D.N.Y July 14, 2014) (government is permitted to introduce compliance policies to demonstrate conspirators' culpable state of mind).

And the courts of appeal have been clear that consciousness of guilt is properly considered by the jury in assessing guilt.  *See United States v. Davis*, 437 F.3d 989, 995 (10th Cir. 2006) (approving jury instruction that evidence pointing to consciousness of guilt can be considered by the jury).  As the Eighth Circuit has put it, "[i]t is universally conceded today that the fact of an accused's flight . . . *concealment, . . . and related conduct*, are admissible as evidence of consciousness of guilt, and thus of guilt itself."  *United States v. Clark*, 45 F.3d 1247, 1250 (8th Cir. 1995) (quoting 2 John H. Wigmore, *Evidence* § 276, at 122 (James H. Chadbourn rev. 1979) (emphases added) (cited in *United States v. Barros*, 2007 WL 9724504 (D. N.M. Aug. 10, 2007)); Eighth Circuit Model Crim. Jury Instructions, Instruction 4.09, Influencing Witness, Etc. (2021) (pattern instruction that "[a]ttempts by a defendant to conceal, destroy, make up evidence, or influence a witness" in connection with a conspiracy "may be considered by you [the jury] in light of all the other evidence in the case," including in deciding "whether this evidence shows a consciousness of guilt.").

Moreover, although violating the Sherman Act does not require specific intent, *see United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 479–80 (10th Cir. 1990), whether Defendants knew

7

what they were doing was illegal bears on issues at the heart of this case: Whether Defendants and their co-conspirators were more likely to be engaged in "innocent" sharing of information or did so as part of a concerted (and secretive) effort to fix prices—given Defendants' knowledge that price sharing is, in fact, *one of the key ways* to fix prices and rig bids.  Indeed, Defendants have squarely put their states of mind at issue by arguing that they shared bid information with competitors for the purpose of "innocently" gathering competitive intelligence. *See, e.g.*, ECF 143 at 7–8; ECF 177 at 5–7 (arguing that exchange of price information is appropriate).  Yet this alleged state of mind is belied by what Defendants knew at the time, and the government should be permitted to rebut Defendants' arguments by showing so—*i.e.*, by showing Defendants knew, based on Pilgrim's antitrust training, that sharing competitively sensitive information is a way to enact or facilitate a price-fixing conspiracy.  Likewise, if Defendants argue that price sharing is a perfectly appropriate norm in the chicken industry, the government should be permitted to rebut this point by showing their own employer—a key competitor in this industry—believed the opposite and forbade such conduct.

In short, if Defendants are permitted to introduce evidence regarding their (allegedly non-collusive) states of mind, the United States should be able to respond.  Otherwise, if Defendants are the only party permitted to introduce evidence regarding their states of mind, the United States

will be hamstrung in responding to a key defense theory and hence greatly prejudiced in presenting its case.[5]

## B. Evidence of Defendant Stiller's Antitrust Education Meets the Knowledge Element of Counts 2-4.

For related reasons, the Court should permit the United States to introduce evidence regarding an ethics class taken by Defendant Stiller as part of an MBA course facilitated by Pilgrim's. The course, *Business 660: Ethical, Legal, and Regulatory Issues*, was taught in Spring 2018. As part of a module covering antitrust law, Defendant Stiller learned that price fixing was a per se violation of the Sherman Act and that it could lead to criminal liability. ECF 212 (United States' Motion for a Rule 17(c) Subpoena) at 5–10. In addition to attending class lectures on the subject, Defendant Stiller was assigned to (1) read materials about antitrust law and (2) write a term paper due on March 4, 2018. *Id.* In a draft of that term paper, which Defendant Stiller e-mailed his co-worker, Clay Matthews, Defendant Stiller spotted an issue regarding obstruction of justice and wrote: "Does Betty commit obstruction of justice by purposefully deleting emails that would implicate her in collusion with another company? Sending the email would be the evidence that the collusion took place . . . and while she believes she deleted it, nothing is really deleted in

---

[5] Antitrust trainings also provide important background for the jury in evaluating the evidence in this case. As the Tenth Circuit and antitrust commentators have explained, context is critical to assessing whether sharing price information may be itself unlawful as part of a price-fixing conspiracy. *Morton Salt Co. v. United States*, 235 F.2d 573, 577 (10th Cir. 1956); *see also* Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law: An Analysis Of Antitrust Principles And Their Application ¶ 2111g (5th ed. 2022). That Pilgrim's company policy precludes employees from sharing pricing information is probative of whether Defendants' actions were done as part of facilitating collusion—as Defendants' employer clearly saw the danger in sharing bid information.

today's world. This would be violation of Sherman Antitrust Act."   ECF No. 212-5 at 1.   That Defendant Stiller received antitrust education along these lines is highly probative to consciousness of guilt and his state of mind—both with regard to participating in the Sherman Act conspiracy (Count 1) for reasons described above, and with regard to the witness tampering and obstruction counts (Counts 2–4). *See United States v. Phillips*, 583 F.3d 1261, 1263–64 (10th Cir. 2009) (discussing obstructive intent required for 18 U.S.C. §1503 and § 1512(c)(2)).

More importantly, in order to prove witness tampering or obstruction of justice (Counts 2–4), the government needs to show that an "official proceeding" (as defined by the statutes) was reasonably foreseeable to or contemplated by Defendant Stiller. *See United States v. Sutton*, 30 F.4th 981, 984 (10th Cir. 2022) (for witness tampering counts, the government must show a criminal investigation was "foreseeable" to or contemplated by a defendant); *United States v. Phillips*, 583 F.3d 1261, 1263–64 (10th Cir. 2009) (discussing knowledge required for 18 U.S.C. §1503 and § 1512(c)(2)).   In order to meet these elements, then, the government should be permitted to put on evidence regarding Defendant Stiller's education and coursework, which shows Defendant Stiller was aware that violating the Sherman Act could lead to criminal and civil liability.[6]

The United States must also show that Defendant Stiller acted in a "knowingly corrupt" manner, *i.e.*, that Stiller was conscious of his wrongdoing, in order to prove corrupt persuasion for the 1512 counts (Counts 2–4). *Arthur Anderson LLP v. United States*, 544 U.S. 696, 706 (2005)

---

[6] Because one of the means and methods of the charged conspiracy was "to conceal and prevent discovery of the conspiracy" (Superseding Indictment, ECF 102 ¶ 57.d), Defendant Stiller's knowledge of antitrust law is also relevant to the Sherman Act charge.

10

(holding "only persons conscious of wrongdoing can be said to 'knowingly . . . corruptly persuad[e]'" and "limiting criminality to persuaders conscious of their wrongdoing").   That Defendant Stiller knew that it was illegal to (1) fix prices and rig bids and (2) purposefully delete or destroy potential evidence is therefore crucial to the government's ability to prove these counts.

### C.  Evidence of Antitrust Training and Education is Not Prejudicial.

The great probative value of such evidence outweighs any minimal risk of prejudice, as the United States does not intend to use the evidence as a legal standard by which the jury will assess the charges.   The government intends to admit this evidence only as a way for the jury to understand Defendants' motives, states of mind, and consciousness of guilt, as well as to rebut Defendants' arguments.  As the First Circuit explained in *Gomez*, testimony related to legal advice received by defendants is admissible because, "[w]hile [that] testimony was not admissible for the purpose of proving what obligations the law imposed upon the [defendant], it was admissible to show the [defendant's] understanding at the time and his ensuing state of mind."  344 F.3d at 115. The evidence also sheds light on key elements the government must prove for Counts 2–4, as described above.

In *Penn*, Chief Judge Brimmer ruled that evidence of antitrust trainings was relevant but excluded the materials "since those are not the standards by which the jury will need to assess the charge." *United States v. Penn*, 1:20-cr-00152-PAB (hereinafter *Penn*), ECF 603 at 7.[7]  That ruling is inapplicable, however, as it would misunderstand the purpose for which the United States seeks

---

[7] Following that decision, prior to the second *Penn* trial, Chief Judge Brimmer subsequently ruled that the antitrust training, even if relevant, would be inadmissible under Rule 403.  *Penn*, ECF 1087 at 3.

to admit evidence of antitrust trainings in this case:  To show the conspirators' states of mind (which Defendants have put at issue), and, with respect to Defendant Stiller, his intent in obstructing justice and tampering with witnesses.  Chief Judge Brimmer did not rule on Defendant Stiller's antitrust education as the issue did not arise in the *Penn* trials.

Finally, even if the Court were to conclude that evidence of antitrust policies, trainings, or education might confuse the jury as to the law, this could easily be cured with a limiting instruction telling the jury to rely on the Court's instructions of the law rather than any descriptions in the trainings, policies, course materials, or Defendant Stiller's papers.  *See Riley*, 2014 WL 3435721, at *6; *Zafiro v. United States*, 506 U.S. 534, 540 (1993).[8]

## CONCLUSION

For the reasons above, the United States respectfully requests the Court allow the United States to elicit testimony from co-conspirators regarding the existence of a conspiracy by using the term "agreement" and (2) to introduce evidence of antitrust training, education, and compliance policies received by Defendants.  Such evidence will be helpful to the jury in determining Defendants' motive, consciousness of guilt, and states of mind when requesting and exchanging competitively sensitive bid information with competitors, as well as Defendant Stiller's intent with

---

[8] Should the Court find that the United States cannot introduce evidence of antitrust trainings, policies, and course materials in its case-in-chief, the United States should nonetheless be permitted to introduce such evidence in rebuttal if Defendants open the door by, e.g., eliciting evidence that pricing and bid information was "market intelligence" or a typical practice in the industry.  *See Tanberg v. Sholtis*, 401 F.3d 1151, 1166 (10th Cir. 2005) ("When a party opens the door to a topic, the admission of rebuttal evidence on that topic becomes permissible").

regard to the witness tampering and obstruction charges.  It will also permit the United States to rebut Defendants' "innocent" explanations of price sharing.

Respectfully submitted this 11th day of October, 2022.

By:     /s/ Yixi (Cecilia) Cheng
        Yixi (Cecilia) Cheng
        Laura Jing Butte
        Sara M. Clingan
        Daniel A. Loveland, Jr.
        Trial Attorneys
        U.S. Department of Justice
        Antitrust Division
        Washington, D.C. 20530
        202-705-8342
        yixi.cheng@usdoj.gov
        *Attorneys for the United States*

13

**CERTIFICATE OF CONFERENCE**

In compliance with Local Rule 7.1(a), the United States conferred with counsel for Defendants via email on October 6, 2022 and via telephonic conference on October 7, 2022. On October 7, 2022, Counsel for Defendants indicated they did <u>not</u> oppose the motion to permit witnesses to testify concerning the existence of an agreement, provided the witness laid foundation for the testimony, but that they do oppose the motion to admit evidence concerning antitrust trainings and compliance policies.

By:   */s/ Yixi (Cecilia) Cheng*
          Yixi (Cecilia) Cheng


**CERTIFICATE OF COMPLIANCE WITH
TYPE-VOLUME LIMITATIONS**

I hereby certify that the foregoing complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

By:   */s/ Yixi (Cecilia) Cheng*
          Yixi (Cecilia) Cheng


**CERTIFICATE OF SERVICE**

I hereby certify that on this October 11th, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record.

By:   */s/ Cecilia Cheng*
          Yixi (Cecilia) Cheng