**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
Judge Daniel D. Domenico**

Criminal Action No. 1:21-cr-00246-DDD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

**(1) JASON MCGUIRE; and
(2) TIMOTHY STILLER,**

    Defendants.

---

**UNITED STATES' MOTION *IN LIMINE* TO PRECLUDE
ARGUMENTS OR EVIDENCE THAT
PRICE SHARING IS CATEGORICALLY LAWFUL**

---

The United States respectfully moves to bar Defendants' counsel from making improper arguments and presenting improper evidence regarding price sharing.

### BACKGROUND

The Superseding Indictment charges in Count 1 that price sharing was one of the means and methods of the conspiracy. ECF 102 ¶ 57(b)–(c). As reflected in the government's *James* log, price-sharing communications between competitors will be an important part of the United States' proof of the price-fixing and bid-rigging conspiracy.

During the *Penn* trials, a defense theme emerged that price sharing was "100% legal." *United States v. Penn*, No. 1:20-CR-152 (*Penn*), C. Tr. June 7, 2022 at 67:17–20 (defense argument that "knowing, receiving, and sharing pricing information is 100 percent legal."); *id*. at 87:21–24

1

("communications [among the suppliers] are a hundred percent legal."). In this case, Defendants have similarly argued to this Court that price sharing is not only categorically lawful, but procompetitive. *See* ECF 143 (Defendants' *James* Brief) at 7 (arguing the practice of sharing and learning confidential bid information is "not just legal: it makes the marketplace more efficient and competitive."); ECF 177 (Defendants' Joint Motion to Dismiss) at 5-6 (arguing exchanges of pricing information are not illegal and claiming "it is legal for competing companies to communicate with each other about price.").

## LEGAL STANDARD

This Court has "broad discretion" to limit improper arguments, statements, and evidence. *United States v. Baker*, 638 F.2d 198, 203 (10th Cir. 1980); *see United States v. Rogers*, 960 F.2d 1501, 1513 (10th Cir. 1992) (closing argument); *United States v. Espinosa*, 771 F.2d 1382, 1406 (10th Cir. 1985) (prejudicial evidence); *United States v. Hampton*, 458 F.2d 29, 30 (10th Cir. 1972) (opening statements). The Court's discretion extends to "the determination of the extent of permissible argument." *United States v. Wilshire Oil Co. of Tex.*, 427 F.2d 969, 978 (10th Cir. 1970). With such broad discretion comes "the responsibility to maintain decorum in keeping with the nature of the proceeding." *United States v. Young*, 470 U.S. 1, 10 (1985); *see also, e.g.*, *United States v. Rivera*, 778 F.2d 591, 593 (10th Cir. 1985) ("The trial judge has an obligation to keep the trial on track."). The Court "is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law." *Quercia v. United States*, 289 U.S. 466, 469 (1933).

"Both the prosecutor *and defense counsel* must be kept within appropriate bounds." *Young*, 470 U.S. at 10 (emphasis added). When "the trial judge takes no corrective action," improper

2

arguments by defense counsel "provok[e] the prosecutor to respond in kind," and trial decorum suffers. *Id.* Therefore, it is best "for the District Judge to deal with the improper argument of the defense counsel promptly." *Id.* at 13.

## ARGUMENT

As the United States argued in its supplemental *James* briefing (ECF 172), the Supreme Court has made clear that price fixers cannot hide behind a label of "price sharing" when such sharing effectuates an agreement. *American Tobacco Co. v. United States*, 328 U.S. 781, 809–10 (1946) ("It is not of importance whether the means used to accomplish the unlawful objective are in themselves lawful or unlawful. Acts done to give effect to the conspiracy may be in themselves wholly innocent acts. Yet, if they are part of the sum of the acts which are relied upon to effectuate the conspiracy which the statute forbids, *they come within its prohibition*.") (emphasis added). Indeed, price sharing is never categorically lawful. The purpose for sharing information—which is often to be inferred based on circumstance—determines whether the sharing is done as part of an illegal agreement and hence whether the sharing is itself illegal. ECF 172 (United States' Supplemental James Brief). *See generally* Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and Their Application ¶¶ 2110–25 (5th ed. 2022).[1]

Price sharing risks "the development of concerted price-fixing arrangements which lie at the core of the Sherman Act's prohibitions." *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 457 (1978). On one end of the spectrum, "collection and marketwide dissemination of price or

---

[1] This is "the preeminent antitrust treatise." *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1234 (10th Cir. 2017).

output information by an entity that is neither owned nor controlled by any market participant is *generally* lawful." Areeda & Hovenkamp ¶ 2111g(1) (emphasis added). In such cases, the conduct is subject to analysis under the rule of reason, and even dissemination of prices by a third party may be unlawful if it is part of an arrangement between competitors. *See, e.g.*, *United States v. Am. Linseed Oil Co.*, 262 U.S. 371, 380 (1923) (holding unlawful an arrangement in which competing manufacturers shared prices through subscriptions to a third-party "bureau"— "a so-called 'exchange,' through which one subscribing manufacturer may obtain detailed information concerning the affairs of others doing like business").

Further along the spectrum, "ad hoc competitor-to-competitor 'exchange' of particularized price information, such as the price offered or made to a particular customer, *should ordinarily be considered a naked or nearly naked restraint*, which can be condemned without a structural inquiry unless the defendant offers a compelling justification." Areeda & Hovenkamp ¶ 2111g(5) (emphasis added). "Exchanges of current price information, of course, have the greatest potential for generating anticompetitive effects and although not *per se* unlawful have consistently been held to violate the Sherman Act." *U.S. Gypsum*, 438 U.S. at 443 n. 16.

Reaching the other end of the spectrum, price sharing is categorically unlawful—criminal, in fact—when it is part of an agreement between competitors "for the purpose and with the effect of raising, depressing, fixing, pegging, or stabilizing the price of a commodity." *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 223 (1940). "When that threshold has been crossed, then we have moved into the territory of price fixing rather than simple information exchange." Areeda & Hovenkamp ¶ 2111g. Accordingly, the Tenth Circuit has held, "illegal price fixing includes informal and indirect, as well as formal and direct, agreements to exchange price information or

fix prices." *King & King Enterprises v. Champlin Petroleum Co.*, 657 F.2d 1147, 1152 (10th Cir. 1981); *accord Morton Salt Co. v. United States*, 235 F.2d 573, 577, 580 (10th Cir. 1956) (inferring the existence of a price-fixing conspiracy from evidence including the "frank exchange, between competitors controlling 95% of the market, of all the details of a fairly complicated pricing system" and finding "enough to connect [a defendant] to the conspiracy" because the defendant pursued a "policy of nondeviation from the prices of others" and "participated in the exchange of pricing information").

At no point along the spectrum is price sharing categorically lawful. Indeed, even "widespread dissemination of price" to both competitors and customers alike is "*not* legal per se." Areeda & Hovenkamp ¶ 2111g(2) (emphasis added). Defendants should not be permitted to hide behind a label of "price sharing" and to mislead the jury with inaccurate statements of law.

## CONCLUSION

Defendants "cannot invoke the Sixth Amendment as a justification for presenting what [would be] a half-truth." *United States v. Nobles*, 422 U.S. 225, 241 (1975). Arguing that price sharing is "100% legal"—or any other formulation suggesting it is categorically lawful—would be just such a half-truth. Accordingly, the United States asks this Court to keep Defendants' counsel "within appropriate bounds," *Young*, 470 U.S. at 10, by barring such improper argument and evidence.

Respectfully submitted this 11th day of October 2022.

By: /s/ *Yixi (Cecilia) Cheng*
Yixi (Cecilia) Cheng
Laura Jing Butte
Sara M. Clingan
Daniel A. Loveland, Jr.
Trial Attorneys

5

U.S. Department of Justice
Antitrust Division
Washington, D.C. 20530
202-705-8342

*Counsel for the United States*

## CERTIFICATE OF CONFERENCE

In compliance with Local Rule 7.1(a), the United States conferred with counsel for Defendants via telephone on October 11, 2022. Counsel for Defendants indicated they opposed this motion.

By: /s/ Yixi (Cecilia) Cheng
Yixi (Cecilia) Cheng

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATIONS

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

By: /s/ Yixi (Cecilia) Cheng
Yixi (Cecilia) Cheng

## CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties of record and make this document available for viewing and downloading.

By: /s/ Yixi (Cecilia) Cheng
Yixi (Cecilia) Cheng